# Henderson Coal Company, Appellant, *v.* Public Service Commission.

*Public Service Company Law — Common carriers — Rules and regulations—Consignments of money—Reasonable requirements.*

A common carrier has the right to prescribe reasonable and appropriate rules and regulations, not in contravention of law, for the conducting of its business, having in view the safety, protection and preservation of freights carried by it, as well as the protection of itself against fraud, injury and undue risk and liability.   It has the right to require the articles to be shipped to be delivered to it within the time necessary to ship the same on its next ensuing trip.   No more can be required for the mere convenience or advantage of the shipper, or to enable him to avoid the risk and put the same on the carrier, when it ought justly to rest upon him.

What is the reasonable amount of money which a carrier may be required to take the risk of keeping over night in any given point of shipment is an administrative question rather than one of law.   It is a question of fact, or, at least, a mixed question of law and fact and one which should be left, in a large degree, to the sound discretion of the Public Service Commission, which has jurisdiction over such matters, and the conclusions of that tribunal are not to be dis-

turbed by judicial interference unless it is made clearly to appear that they are unreasonable and not in conformity with law.

Where an express company made a rule that it would refuse for transportation packages of money to be shipped on the following day, such a provision is not unreasonable or contrary to the regulations of the Public Service Company Law.

Argued April 24, 1919. Appeal, No. 145, April Term, 1919, by plaintiff, from order of the Public Service Commission of the Commonwealth of Pennsylvania, No. C-2355, in the case of Henderson Coal Company v. The Public Service Commission, on appeal, and American Express Company and American Railway Express Company. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, WILLIAMS and KELLER, JJ. Affirmed.

Complaint to the Public Service Commission that certain rules and regulations of the American Railway Express Company, operating the American Express Company, relative to the receipt of shipments of money, were unreasonable, unlawful and discriminatory.

The facts are stated in the opinion of the Superior Court.

The commission dismissed the complaint. Complainant appealed.

*Error assigned* was the order of the commission.

*W. D. Stewart,* and with him *A. Leo Weil* and *Charles M. Thorp,* for appellant.—The regulation was in violation of the respondent's duty as a common carrier: Joynes v. P. R. R., 235 Pa. 232, 2 Hutchinson, Carriers (3d Ed.), 1008, 10 Corpus Juris 65; United States Express Co. v. State et al., 150 Pac. Rep. 178; Alsop v. Southern Express Company, 104 N. C. 278; Tie Co. v. Railroad Co., 175 Fed. Rep. 28.

*Branch P. Kerfoot,* and with him *John H. Mooers,* for American Railway Express Co., intervening appellee.

OPINION BY PORTER, J., October 13, 1919:

The Henderson Coal Company presented its complaint to the Public Service Commission averring that the American Express Company is a public service company engaged in the business of transporting property for hire as a common carrier, and the American Railways Express Company is a public service corporation operating said American Express Company, engaged in business in Pittsburgh, Pennsylvania; that for a considerable time prior to the complaint the complainant had shipped by the American Express Company, from Pittsburgh to Hendersonville, Pennsylvania, the money necessary to pay its employees at its mines at Hendersonville, Pennsylvania, by delivering said money to said express company late in the afternoon of the day preceding the day on which it would pay its said employees, the express company shipped the same on a train leaving Pittsburgh the next morning; that the respondents had notified the complainant that they would refuse to accept said money on the preceding evening for shipment the next morning; that this regulation and practice of the express company was unreasonable, unlawful and discriminatory, and praying that the respondents be required to answer the charges and that the commission upon a final hearing thereof make such an order in the premises as might seem fit. The answer of the respondents averred that the American Express Company had gone out of the express transportation business and that the American Railways Express Company, as the agent of the Director General of Railroads of the United States, is conducting the express transportation business of the country, including that formerly conducted by the American Express Company. The answer admitted that the respondents refused to accept money at Pittsburgh for shipment to Hendersonville on the following day, but denied that such regulation was in violation of its duties as a common carrier or that it was unreasonable, unlawful and discriminatory. The Public Service Commission after a hearing at

which considerable testimony was taken dismissed the complaint, from which action the complainant appeals. The American Railways Express Company has, upon its petition, been made a party to the record as an intervening appellee.

It was at the hearing before the Public Service Commission conceded by all parties that the American Express Company had ceased to operate as a common carrier, and, in the language of counsel for the complainant, "Since the government control of the railroads has been in effect, the Director General of Railroads, as I understand it, has organized what is known as the American Railways Express Company which is operating all the express companies in the country, so that the respondent here is in reality the American Railways Express Company." There may be a question whether the Public Service Commission of Pennsylvania has jurisdiction to pass upon the validity of regulations promulgated by the direct agent of the government of the United States, while operating this system of common carriers. We deem it proper to here state that question was not raised by the American Railways Express Company, and upon it we express no opinion.

The evidence presented to the commission disclosed the following facts: The Henderson Coal Company operates a coal mine at Hendersonville, about thirty miles from Pittsburgh, on the line of the Montour railroad, a branch connecting with the Pittsburgh & Lake Erie railroad. There is no station at that point and the express company has no office nor agent there. When the complainant shipped by the express company the money to meet the pay roll of its miners at Hendersonville it was necessary to arrange to have the agent of the coal company meet the train at Hendersonville and there receive the package of money from the agent of the express company upon the train. There was, at Hendersonville, no bank in which the coal company could deposit the money over night, and it was necessary that the money should

go by a morning train, in order that it might be paid to the employees on the same day. The latest train upon which it could be shipped and get there in time, under existing railroad schedules, left Pittsburgh at 7:30 a. m., and the express company, under its regulations, would accept the money in the morning at 7 o'clock and ship it by that train. The complainant company paid its employees twice a month and the currency to meet each pay-roll amounted to from thirteen to fifteen thousand dollars. The shipments of this character by the express company, of currency to meet pay rolls, at Pittsburgh, will run eight million dollars a month. One witness of large expérience testified that there is no city in the United States where the express company would have to take care of so much money, of this character, as at Pittsburgh. Under the regulation of which the appellant complains the American Railways Express Company has refused to accept, upon one day, large shipments of currency to meet pay rolls which are intended to be shipped upon the following day, requiring that they be presented on the day upon which they are to be transported, and making all arrangements to take care of them when to be shipped by early trains. The express company declines to accept any shipment of money, exceeding one thousand dollars in amount, which is not intended to be shipped until the next day. All large shippers of currency to meet pay rolls, except this complainant, had made arrangements with their banks to get the currency early in the morning, and complied with the regulation of which the appellant complains. There was no evidence that this complainant had made an effort to arrange with any bank to have the money furnished before banking hours, so as to comply with this regulation. The Public Service Commission found, upon competent evidence, that this complainant could make arrangements with a bank to have the money furnished in the morning, in time to deliver it for shipment by the early train. The commission determined that, "In view of the circumstances

surrounding this particular shipment of money, we are of the opinion that the practice of the express company complained of is not unjust, unreasonable or discriminatory."

At common law the carrier was under no obligation to receive articles tendered for shipment until ready to start upon his journey: Lane v. Cotton, First Lord Raymond 646. The transportation, in those early days, was usually under the direct personal supervision of the carrier, but the enormous expansion of the business, the character of the vehicles of transportation in modern practice, and the time required to handle the great volume of commodities, have resulted in the general rule that a common carrier shall accept shipments tendered within a reasonable time before the transportation can commence. The carrier is not a safe deposit company, its business is not the storing or the safe keeping or insuring the safety of goods or money. Its business is the transportation of them. It necessarily insures not only their carriage, but their safety from the time of its receipt of them for transportation until it delivers them at their destination. It may not lawfully refuse to receive them for carriage within a reasonable time before the transportation can commence, but, since the keeping and the insurance of the safety of the goods before and after the transportation are but the necessary incidents of the carriage, and do not constitute the chief undertaking or business of the carrier, no duty is imposed upon it to assume such responsibility an unreasonable length of time before the carriage can begin. The reasonableness of the time before the transportation within which it is the duty of the carrier to receive money or goods for carriage must be measured primarily by the relation of this time to the business and liabilities of the carrier, and not exclusively by its relation to the various trades and conveniences of its customers: Platt v. Lecocque, 158 Federal 723. A common carrier has the right to prescribe reasonable and appropriate rules and regulations, not

in contravention of law, for the conduct of its business, having in view the safety, protection and preservation of freights carried by it, and, as well, the protection of itself against fraud, injury and undue risk and liability. It has the right to require that the articles to be shipped shall be delivered to it within the time necessary to enable it to ship the same on its next ensuing trip. No more can be required for the mere convenience or advantage of the shipper, or to enable him to avoid a risk and put the same on the carrier, that ought justly to rest upon himself.

What is a reasonable time must vary with the character of the shipment and all the circumstances surrounding the transaction. Under the regulation of which the appellant complains the express company declined to accept any shipment of money to an amount in excess of one thousand dollars which was not intended to be shipped until the next day, and place the risk of its safe keeping over night upon the carrier. The learned counsel for the appellant says in his brief: "We believe the appellee could rightfully refuse to accept a shipment of one million dollars if it were tendered, for the reason that the law only requires it to accept reasonable amounts of money." He argues, however, that the amount tendered by the appellant, between fifteen and sixteen thousand dollars, is not unreasonable. The difficulty with this position is that the carrier must treat all customers who ship under like circumstances from a given point in the same manner, it cannot unreasonably discriminate. If the express company undertakes to assume the risk of keeping over night a shipment of sixteen thousand dollars for this appellant, it must, also, assume the same risk for all shippers whose tenders do not exceed sixteen thousand dollars. It appears in evidence, as we have said, that the shipments of currency for pay rolls out of Pittsburgh amounted to eight million dollars a month, and it was also testified that the aggregate sum of one day's shipments might reach two or three million dollars.

The argument of the appellant concedes that there must be a limit to the amount of money which any shipper could reasonably require the carrier to take the risk of keeping over night prior to the commencement of the transportation. What is the reasonable amount which a carrier may be required to take the risk of keeping over night at any given point of shipment? That is an administrative question rather than one of law. It is a question of fact, or at least a mixed question of law and fact. This is one of those questions which must be left in a large degree to the sound judgment of the commission and when that judgment has been exercised upon competent and relevant evidence the conclusion ought not to be disturbed by judicial interference unless it is made clearly to appear that it is unreasonable and not in conformity with law. In such cases the orders of the commission are declared by the statute to be prima facie evidence of the reasonableness thereof and the burden of establishing the contrary rests on the appellant. In determining questions of fact, or mixed questions of law and fact, the court confines itself to the ultimate question as to whether the commission acted within its power, it will not consider the expediency or wisdom of the order, or whether on like testimony it would make a similar ruling. After full consideration of the evidence we are unable to find any satisfactory ground upon which to rest the conclusion that the order entered is so manifestly unreasonable as to justify its reversal; nor is there any reason for holding that it is not in conformity with law: West Va. P. & P. Co. v. Public Service Commission, 65 Pa. Superior Ct. 5; Ben Avon Boro. v. Ohio Valley Water Co., 260 Pa. 289.

The order of the Public Service Commission is affirmed and the appeal dismissed at cost of the appellant.